# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALBERT PETE VEENSTRA III, | |
| Plaintiff, | Case No. 1:09-CV-573-EJL |
| v. | **AMENDED\* MEMORANDUM DECISION AND ORDER** |
| CORRECTIONS CORPORATION OF AMERICA (CCA), a Tennessee corporation; STEVEN CONRY, V.P., CCA; ICC Mailroom Supervisor, KATHY RADFORD; PHILIP VALDEZ, Warden ICC; JOHN/JANE, Mailroom employees 1&2; Grievance Coordinator CHESTER PENN; JOEL VANCE YOUNG, Assistant Warden ICC; sued in their individual and official capacities, and their successors in office, | |
| Defendants. | |

Before the Court are Defendants' Motion to Dismiss (Dkt. 18), Plaintiff's Motion to Supplement (Dkt. 22), and Plaintiff's Request for Clarification (Dkt. 35). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court Dist. Idaho Loc. Civ. R. 7.1.

---

\* The Memorandum Decision and Order (Dkt.37) is hereby amended only to address clerical errors on pages 10 and 12. Rather than referring to June and July of 2008, the order is hereby amended to refer to June and July of 2010.

**AMENDED MEMORANDUM DECISION AND ORDER - 1**

As explained more fully below, the Court will grant in part and deny in part Defendants' Motion to Dismiss (Dkt. 18) and grant Plaintiff's Motion to Supplement (Dkt. 22) and Request for Clarification (Dkt. 35).

## BACKGROUND

On June 18, 2008, Plaintiff Albert Pete Veenstra III ("Plaintiff") was transferred from the Idaho Corrections Center ("ICC"), a private prison operated by Defendant Corrections Corporation of America ("CCA"), to the Bill Clayton Detention Center ("BCDC") in Littlefield, Texas. It is undisputed that Plaintiff's mail should have been forwarded to him at this new facility for sixty days, ending on August 18, 2008.

Plaintiff alleges that ICC Mailroom Supervisor Kathy Radford ("Radford") and CCA violated this policy sometime between August 8 and 11, 2008 by failing to forward his legal mail, in particular, a Supreme Court Record prepared by the Gooding County District Court Clerk that was mailed to Plaintiff on August 7, 2008. *See Plaintiff's Response to Defendant Kathy Radford's Affidavit*, Ex. 1 (Dkt. 20-3). The Supreme Court Record was returned to the Gooding County District Court Clerk on August 11 or 12, 2008 without a forwarding address. *Id*. at Ex. 3.[1]

Plaintiff alleges that it was important for him to receive this legal mail because he was representing himself pro se in the state court appellate proceedings. However, there is no allegation that Plaintiff was prejudiced in his state court appeal as a result of the delay.

---

[1]   There is a dispute of fact as to whether the Supreme Court Record was sent to ICC or the Idaho State Correctional Institute ("ISCI") before it was sent back to the Good County Clerk of Court. This dispute is not relevant to the issues before the Court today.

Regardless, Plaintiff did not file a concern form regarding the incident until he was transferred back to ICC on September 17, 2009, over a year after the alleged incident. Five days after his transfer, Plaintiff filed an inmate concern form. The next day, ICC Staff responded that the incident form was untimely. Plaintiff filed both a grievance and a grievance appeal, thus exhausting his administrative remedies to the extent they were still available to him over a year after the incident occurred.

On November 6, 2009, Plaintiff initiated the instant proceedings by filing a Complaint (Dkt. 1). The original Complaint named two Defendants: ICC Mail Room Supervisor Kathy Radford ("Radford") and Corrections Corporation of America ("CCA"), the private company operating the ICC. The allegations were specific to the single incident described above, wherein Plaintiff's legal mail was allegedly returned to the Gooding County District Court Clerk without a forwarding address.

The Court conducted an initial review of the Complaint and allowed Plaintiff to proceed with the claim against Radford. Dkt. 6, p. 4. In contrast, Plaintiff was not allowed to proceed with the claims against CCA, because the allegations did not reflect that CCA had a widespread policy or custom of failing to forward legal mail. *Id.* at pp. 5-7. The Initial Review provided Plaintiff with leave to amend the Complaint, which Plaintiff did, filing the First Amended Complaint on July 12, 2010. (Dkt. 14).

In the First Amended Complaint, Plaintiff continues to allege that Radford is responsible for the August 2008 incident in which his legal mail was returned to sender without a forwarding address. *Id*. In addition, Plaintiff added allegations concerning on-

going mail issues and a new claim regarding the manner in which the grievance procedures are handled at ICC.

The First Amended Complaint names the following Defendants: (1) Radford; (2) CCA; (3) Steven Conry, a Vice President of CCA; (4) Phillip Valdez, ICC Warden; (5) Chester Penn, grievance coordinator at ICC; and (6) Joel Vance Young, Assistant Warden at ICC. Plaintiff's claims are: (1) Defendants Valdez, Conry, and Young condoned improper mail room procedures in violation of the First, Fifth, and Fourteenth Amendments; (2) Defendant Radford failed to follow established policies and directives in operating the mailroom in violation of the First, Fifth, and Fourteenth Amendments; (3) Defendant Radford violated 18 U.S.C. §§ 1701, 1702, and 1703 in obstructing Plaintiff's legal mail and causing undue delay; and (4) Defendant Penn failed to follow established policies and directives in the overall ICC grievance process in violation of the First, Fifth, and Fourteenth Amendments.

In response, Defendants filed a Motion to Dismiss (Dkt. 18) on the basis that Plaintiff failed to exhaust his administrative remedies. Defendants contend that claims based on the alleged failure to forward legal mail in August 2008 were not exhausted in a timely manner. In addition, Defendants contend that the additional claims based on allegations that his mail that was not received in a timely manner in June and July 2010 were not exhausted at all prior to the claims being filed.

**DISCUSSION**

**A.    Motion to Dismiss for Failure to Exhaust Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title ... until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). This requirement is intended to give "prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Id*. at 204.

Proper exhaustion is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

By its plain terms, however, the PLRA requires prisoners to exhaust only those avenues of relief that are "available" to them. 42 U.S.C. § 1997a(e). When prison officials prevent a prisoner from using the correct channels to route a complaint, an administrative remedy that may be theoretically in place will not be available to the prisoner as a practical matter, and the failure to adhere to technical requirements will be excused. *Nuñez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Confusing or contradictory information given to a prisoner

is also pertinent "because it informs [the] determination of whether relief was, as a practical matter, 'available.'" *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005).

A claim that a prisoner failed to exhaust administrative remedies is an affirmative defense that should be brought as an unenumerated motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2002). The district court may consider matters outside of the pleadings and can resolve disputed issues of fact, if necessary. *Id*. Defendants bear the burden of raising and proving the absence of exhaustion. *Brown*, 422 F.3d at 936-37.

1.    *The ICC Grievance System*

ICC follows the IDOC offender grievance process contained in standard operating procedure ("SOP") 316.02.01.001, version 3.0, Revised May 2008. *See Affidavit of Chester Penn*, ¶ 6, Ex. C (Dkt. 18-2). This grievance system includes three required steps before the administrative grievance process is exhausted. *Id.* at ¶ 12. The prisoner must first file a concern form, then a grievance, and ultimately a grievance appeal if the issue has not been resolved. *Id.* at Ex. C, p. 3. Each facility has a locked box for offenders to place concern forms and grievances. *Id.* at Ex. C, p. 4.

The federal district court has repeatedly found that this appeals system is generally adequate because it is a relatively simple grievance procedure that provides inmates with an available remedy. *See, e.g. Leary v. Idaho*, CV 07-541-S-EJL, D. Idaho March 17, 2009, 2009 WL 701473 ("The IDOC has a relatively simple grievance procedure.").

However, the Court has not previously determined this issue as it relates to an Idaho inmate who allegedly suffers damages at the hands of Idaho prison personnel while the inmate is housed in an out-of-state prison facility. In the particular circumstances of this case, the Court finds that Defendants have not met their burden to prove that the grievance system was "available" to Plaintiff from his remote location.

### 2. *Administrative Exhaustion and the Returned Legal Mail*

Plaintiff claims that there is no requirement that a concern form be filed within 30 days of an incident. This argument is unpersuasive, as it is inconsistent with the ICC grievance system as a whole and may be inconsistent with Idaho case law. *See Butters v. Valdez*, 149 Idaho 764, 241 P.3d 7 (Ct. App. 2010).[2]

As Plaintiff correctly describes, the concern form does not contain a specific deadline requirement. However, the prison grievance system requires three steps, and a concern form is a prerequisite to a grievance form that "must be submitted within 30 days of the incident." *Affidavit of Chester Penn*, Ex. C, p. 5. Thus, the implication of the rule

---

[2]    In *Butters*, the Idaho Court of Appeals in addressing a previous version of the IDOC grievance system with a fifteen-day deadline stated:

> We note, too, that while, as Butters argues, the procedure did not set an express deadline for filing a concern form, the procedure contemplated the filing and processing of a concern form in advance of the filing and processing of the grievance form, which grievance form must have been filed, under the procedures at issue in this case, within fifteen days of the incident.

149 Idaho at 769, 241 P.3d 7, 11, n.3.

**AMENDED MEMORANDUM DECISION AND ORDER - 7**

is that, in order to exhaust all three steps of the grievance procedure, an inmate must file a concern form within 30 days of the incident in order to ensure that the grievance is timely.

This is how the ICC interprets the time requirements in the grievance procedure, *see Plaintiff's Ex. 5*, p. 3 (Dkt. 22), and this interpretation, though not abundantly clear from the rules, makes sense to the Court and is not so confusing as to render the grievance procedure "unavailable." Moreover, ICC allows the inmate to file a grievance before the concern form has been answered. Accordingly, the Court is satisfied that the 30-day concern form deadline is a valid part of the "available" IDOC grievance procedure.

Nonetheless, Defendants have not met their affirmative burden to show the administrative review process was "available" to Plaintiff when he was in Texas. The IDOC grievance system described above presupposes that the prisoner is located in the facility and can return his concern or grievance forms in the lock boxes provided by ICC. This remedy was not available to Plaintiff from Texas. Moreover, it is not clear that an alternate remedy was made available to him while he was away.

Moreover, the Court is persuaded that Plaintiff acted quickly to take advantage of the administrative remedies available almost immediately upon his return to the ICC facility in Idaho. The record reflects that he exhausted his administrative remedies in short order at that time. *Affidavit of Chester Penn*, ¶ 15 (Dkt. 18-2).

The record also indicates that Plaintiff did not anticipate filing a grievance form until he returned to ICC. He states "I did not file a concern form and a grievance back in August . . . 2008. I had no reason to worry about legal mail until I came back to ICC."

*See Defendants' Response to Plaintiff's Motion to Enter Exhibit "5" and Plaintiff's Motion to Stay* (Dkt. 25).

In short, the Court does not find on the facts before it at this time that the grievance system was available to Plaintiff while he was in Texas. Accordingly, the motion to dismiss on the basis of exhaustion is denied with regard to Plaintiff's claims regarding the August 2008 mail incident.

### 3.  *Administrative Exhaustion and the New Claims Re On-Going Problems with Mail*

In the Amended Complaint, Plaintiff alleges that he did not receive his mail in a timely manner in June and July 2010. Defendant contends that Plaintiff could not have exhausted these claims, since the Amended Complaint was filed on July 12, 2010.

The Court finds this argument persuasive, noting that Plaintiff does not dispute these facts or this aspect of the Defendants' argument. Accordingly, Plaintiff may not bring a separate claim on the basis that his mail was mishandled in June and July 2010.

Nonetheless, these allegations may be relied upon to establish the policy and practice claims against CCA originally dismissed in the Initial Review Order. The Court is not convinced that these allegations are so egregious as to state a separate constitutional claim, even if the administrative grievance procedures were exhausted. However, they may, in combination with other allegations, support a claim that there is a pattern or practice of improper mail handling at ICC.

In accordance with the foregoing, any claims based solely upon the alleged mail incidents in June and July 2010 are dismissed for failure to exhaust administrative remedies.

**B.     Plaintiff's Motion to Supplement**

The Court will grant Plaintiff's Motion to Supplement (Dkt. 22). Plaintiff appropriately requested leave of the court to add this evidence to his opposition to Defendants' Motion to Dismiss, and it appears that Defendants do not oppose the exhibit but rely upon it in support of their position.

Exhibit 5 is a Concern Form dated August 8, 2010, addressed to Pam Sonnen and seeking clarification regarding the proper timelines applicable to prisoner concern forms. Consistent with the instant order, Sonnen replied that the term "incident" refers to whatever it is the prisoner complains of and that the prisoner may file a grievance prior to receiving an answer regarding his concern form. The Court considered this evidence in resolving the motion to dismiss issue[3].

**C.     Plaintiff's Request for Clarification**

Plaintiff seeks clarification of the Order for Payment of Inmate Filing Fee (Dkt. 7). Plaintiff has a job and 50 percent of his wages are garnished to pay child support. Plaintiff

---

[3] The Court also notes Plaintiff's efforts in trying to understand how the ICC administrative grievance system works. His concern forms were clear and respectful, as were Sonnen's responses. This highlights the importance of a good administrative process and one of the reasons why administrative exhaustion is required. It allows inmates and prison staff to communicate with one another, share information, and, ideally, resolve issues informally and without court intervention.

wants to know if the Court will be paid 20 percent of his income or 20 percent of his account balance.

The Court Order directing payment of the filing fee reflects that the Court must be paid 20 percent of Plaintiff's wages, provided that Plaintiff's account does not fall below $10.00. Assuming an account balance of greater than $10.00, this means that for every dollar Plaintiff earns, $ .50 is paid to his wife and $ .20 is paid to the Court, leaving $ .30 for Plaintiff.

## CONCLUSION

In conclusion, Defendants have met their burden and effectively demonstrated that Plaintiff has not exhausted the administrative appeals process with regard to the claims of mail problems at ICC in June and July 2010. Nonetheless, the claims regarding the August 2008 mail incident are not dismissed, as the Court is not convinced that the prison grievance system was "available" to Plaintiff while he was incarcerated in Texas. Moreover, the claims against Penn relating to the grievance system remain viable, as they were not subject to the motion to dismiss.

Furthermore, the Court finds that this case may be appropriate for a telephonic settlement conference prior to placing it on a case management track. Accordingly, the Court will allow the parties 30 days from entry of this Order to file a Notice with the Court indicating their interest in a telephonic settlement. Only if both parties agree will the Court refer the case to a United States Magistrate Judge for the purpose of holding

telephonic settlement conference. If both parties do not agree to participate in a telephonic settlement conference, then the Court will issue a Scheduling Order.

## ORDER

**IT IS ORDERED:**

1.      Defendants' Motion to Dismiss (Dkt. 18) is GRANTED in part and DENIED in part. The motion is granted to the limited extent that Plaintiff's claims related to the alleged mail delays in June and July 2010 are DISMISSED;

2.      Plaintiff's Motion to Supplement (Dkt. 22) is GRANTED; and

3.      The parties have 30 days from entry of this Order to file a Notice with the Court indicating whether they wish to participate in a telephonic settlement conference before a United States Magistrate Judge.

DATED:  **April 12, 2011**

Honorable Edward J. Lodge
U. S. District Judge