UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALBERT PETE VEENSTRA III,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CORRECTIONS CORPORATION OF AMERICA (CCA), a Tennessee Corporation, STEVEN CONRY, V.P., CCA; ICC Mailroom Supervisor, KATHY RADFORD; PHILIP VALDEZ, Warden ICC; JOHN/JANE, Mailroom employees 1 & 2; Grievance Coordinator CHESTER PENN; JOEL VANCE YOUNG, Assistant Warden ICC; sued in their individual and official capacities, and their successors in office,<br><br>　　　　　Defendants. | Case No. 1:09-cv-00573-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendants' Motion to Reconsider, or, in the Alternative, Renewed Motion to Dismiss (Dkt. 38). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral arguments, this matter shall be decided on the record before this Court. D. Idaho L. Civ. R. 7.1(d).

# BACKGROUND

The facts underlying this lawsuit are detailed in the Court's March 28 order, *see* Dkt. 37, at 2-4, and will not be recapitulated in full here. Briefly, however, the facts relevant to this motion are as follows:

In June 2008, plaintiff Albert Veenstra was transferred from the Idaho Corrections Center to the Bill Clayton Detention Center in Littlefield, Texas. He remained there until September 2009, when he was transferred back to the Idaho prison.

Veenstra's mail should have been forwarded to him at the Texas facility for sixty days, ending August 18, 2008. Veenstra alleges that ICC mailroom supervisor Kathy Radford violated this policy some time between August 8 and 11, 2008, by failing to forward his mail.

Veenstra did not file a concern form about this incident while he was in the Texas prison. Instead, he filed the concern form on September 22, 2009, five days after he was transferred from Texas back to Idaho.

In their August 2010 motion, Defendants argued that Veenstra's complaint should be dismissed because he did not timely exhaust his administrative remedies. *See* Dkt. 18. On March 28, 2011, the Court granted in part and denied in part the motion. *See* Dkt. 37.

The partial denial related to the August mailroom incident described above. In that regard, the Court concluded that Defendants had failed to demonstrate that the Idaho prison's administrative procedures remained available to Veenstra while he was in the

Texas prison. *See id.* at 8 (holding Defendants had "not met their affirmative burden to show that the administrative review process was 'available' to Plaintiff when he was in Texas"). Defendants ask for reconsideration of this conclusion.

## ANALYSIS

1.  **Legal Standard Applicable to this Motion**

A motion to reconsider an interlocutory ruling requires an analysis of two important principles: (1) Error must be corrected; and (2) Judicial efficiency demands forward progress. The former principal has led courts to hold that a denial of a motion to dismiss or for summary judgment may be reconsidered at any time before final judgment. *Preaseau v. Prudential Ins. Co.*, 591 F.2d 74, 79-80 (9th Cir. 1979). While even an interlocutory decision becomes the "law of the case," it is not necessarily carved in stone. Justice Oliver Wendell Holmes concluded that the "law of the case" doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912). "The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous. There is no need to await reversal." *In re Airport Car Rental Antitrust Litig.*, 521 F. Supp. 568, 572 (N.D. Cal. 1981).

The need to be right, however, must co-exist with the need for forward progress. A court's opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*,

123 F.R.D. 282, 288 (N.D. Ill.1988). "Courts have distilled various grounds for reconsideration of prior rulings into three major grounds for justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or to prevent manifest injustice." *Louen v. Twedt*, 2007 WL 915226 (E.D. Cal. March 26, 2007). If the motion to reconsider does not fall within one of these three categories, it must be denied.

**2.   The Basis for Reconsideration**

Here, Defendants contend that the Court "made an inadvertent mistake" in finding that Idaho Department of Correction (IDOC) grievance procedures were unavailable to Veenstra while he was in Texas. *See* Dkt. 38-1, at 4. Specifically, Defendants point to a section of the grievance policy (discussed below) that provides for handling of inter-facility grievances. The entire grievance policy was submitted to the Court in connection with the August 2010 motion to dismiss, but neither party discussed this particular section of the policy. Defendants contend that if the Court had considered this section of the grievance policy, it would have found that Veenstra failed to exhaust his administrative remedies.

**3.   Failure to Exhaust Administrative Remedies[1]**

The Prison Litigation Reform Act (PLRA) does not expressly address an inmate's obligation to grieve violations of constitutional rights in one facility when incarcerated in

---

[1] The legal standard relevant to the exhaustion doctrine is set forth in the Court's March 28, 2011 order in this matter. *See* Dkt. 37, at 5-6.

another, or under what circumstances the grievance procedure in one facility should be considered "available" to an inmate who has been transferred to another. Many courts hold that the mere fact of a transfer does not affect a prisoner's obligation to exhaust administrative remedies before filing suit. *See, e.g., Napier v. Laurel County*, 636 F.3d 218, 223 (6th Cir. 2011); *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002). *But see Rodriguez v. Westchester County Jail Correctional Dep't,* 372 F.3d 485, 488 (2d Cir. 2004) (transfer from county jail to state prison rendered administrative procedure unavailable). Further, courts have uniformly held that grievance procedures at a transferor facility remain available to prisoners who are transferred outside that facility if both prisons are administered by the same agency. *See, e.g., Flournoy v. Schomig*, 152 Fed. Appx. 535, 537-38 (7th Cir. 2005) (unpublished order) (PLRA's exhaustion requirement not satisfied where administrative procedures provided for the pursuit of a grievance following prisoner's transfer to another state institution); *Parmer v. Idaho Correctional Corp.,* 2009 WL 735646, at *4 (D. Idaho Mar. 19, 2009) (administrative procedures at transferor facility deemed "available" to prisoner who was transferred eight days after the deadline to file a grievance; inter-facility agreement allowed grievances filed at first prison to be forwarded to transferee prison); *Carini v. Austin*, 2008 WL 151555, at *4 (S.D.N.Y. Jan. 14, 2008); *Finger v. Superintendent McFinnis*, 2004 WL 1467506, at *1 (S.D.N.Y. June 16, 2004).

Here, considering the specific section of the grievance policy Defendants now

discuss, the Court concludes that IDOC grievance policies were available to inmates housed in the Texas prison. The applicable rule states:

> If the issue the offender is grieving occurred at a facility other than where the offender is currently housed, the Grievance Coordinator at the current institution must fax the Grievance/Appeal Form and attachments to the Grievance Coordinator at the facility where the issue occurred. All data entries must be done at the facility where the issue occurred. The original grievance form will be filed in a pending file at the facility where the offender is housed.

Dkt. 18-2, at 14-34.

Under this rule, Veenstra could have grieved the August 2008 mailroom incident while he was in Texas.

The Court is not persuaded by either of Veenstra's arguments to the contrary.

First, Veenstra indicates that officials in the Texas facility taped shut the grievance lock-boxes for IDOC offenders and instructed prisoners to submit their grievances to a basket on the correctional officer's desk. This argument does not demonstrate that the grievance system was unavailable to Veenstra; it shows simply that the prison officials in Texas provided an alternate mechanism for submitting grievances. Veenstra does not establish that, while in Texas, he attempted to file a grievance regarding the August 2008 mailroom incident but was prevented from doing so.[2]

---

[2] Veenstra indicates that on one occasion, when he wanted to grieve another issue (overcrowding at the Texas facility), a Texas jail staff member indicated there were no grievance forms in his desk. The staff member instead asked the warden to discuss the issues with Veenstra. The warden spoke to Veenstra the same day and moved him to a less crowded tier. *See* Dkt. 40-1 ¶¶ 9-10. This incident does not establish that grievance procedures relative to the August 2008 mailroom were unavailable to Veenstra.

Second, Veenstra argues that the person who initially reviewed his concern form, Chester Penn, wrongly decided not to forward it to the reviewing authority for consideration of an extension of the 30-day deadline for filing grievances. This argument is based upon a misunderstanding of the applicable procedures.

These procedures state that grievances will be rejected unless inmates follow specified guidelines, including this one: "Grievances must be submitted within 30 days of the incident. (Note: The review authority may extend this time limit.)" Dkt. 18-2, at 18. A few lines later, there is another note, explaining the review authority's involvement in extending deadlines:

> Grievance coordinators may return grievances that do not meet these guidelines; however, grievance coordinators will consult the review or appellate authority anytime there is a question regarding the acceptance or rejection of a grievance. (See process steps in *section 5* below.)

*Id*.

These rules do not require Penn to consult a higher authority in order to reject a grievance that is unquestionably late. Here, Veenstra filed his concern form nearly one year after Ms. Radford allegedly failed to forward his mail.

Under these facts, Defendants have satisfied their burden of demonstrating that Veenstra failed to exhaust his administrative remedies regarding the August 2008 mailroom incident.

# ORDER

**IT IS ORDERED:**

1. Defendants' Motion to Reconsider, or, in the Alternative, Motion to Dismiss (Dkt. 38) is GRANTED.

2. Veenstra's claim regarding the August 2008 mailroom incident described above is DISMISSED.

2. There being no remaining claims, Veenstra's complaint is DISMISSED without prejudice.

DATED: **August 15, 2011**

Honorable Edward J. Lodge
U. S. District Judge